IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHELLY GROCHOWSKI

    Plaintiff,

v.                          3:16-CV-01716
                           (JUDGE MARIANI)

WILKES-BARRE BEHAVIORAL
HOSPITAL COMPANY, LLC,

    Defendant.

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On August 17, 2016, Plaintiff, Shelly Grochowski, brought suit against Defendants Wilkes-Barre Behavioral Hospital Company, LLC and Community Health Systems Professional Services Corporation.[1] Plaintiff's Complaint set forth ten counts: failure to accommodate in violation of the Americans with Disabilities Act (Count 1) and Pennsylvania Human Relations Act (Count 4); unlawful discrimination in violation of the Americans with Disabilities Act (Count 2) and Pennsylvania Human Relations Act (Count 5); retaliation in violation of the Americans with Disabilities Act (Count 3) and Pennsylvania Human Relations Act (Count 6); interference in violation of the Family Medical Leave Act (Count 7); retaliation in violation of the Family Medical Leave Act (Count 8); violation of Title VII of the

---

[1] By Stipulation filed on September 19, 2016 (Doc. 5), the parties stipulated that Defendant Community Health Systems Professional Services Corporation was not a proper defendant in this matter because it was not Plaintiff's employer and accordingly that Community Health Systems Professional Services Corporation should be dismissed, without prejudice, as a defendant in this case.

Civil Rights Act for pregnancy discrimination (Count 9); and violation of the Pennsylvania Human Relations Act for pregnancy discrimination (Count 10). (Doc. 1).

On June 30, 2017, Wilkes-Barre Behavioral Hospital Company filed a motion for summary judgment (Doc. 18), together with a statement of facts with attached exhibits (Doc. 19) and a brief in support of its motion (Doc. 20). Plaintiff timely responded with a brief in opposition to the motion for summary judgment (Doc. 42), response to the statement of facts (Doc. 25), and a number of exhibits (Docs. 26-41).

Defendant's Motion was referred to Magistrate Judge Martin C. Carlson for a Report and Recommendation on May 30, 2018. On August 31, 2018, Judge Carlson issued a Report and Recommendation ("R&R") (Doc. 46) recommending that the Hospital's motion for summary judgment be granted in part and denied in part. Specifically, Judge Carlson recommended that the Hospital's motion for summary judgment should be granted with respect to Plaintiff Grochowski's FMLA interference claim (Count VII), Plaintiff Grochowski's disability based claims under the ADA, and its state law analogue, the PHRA, set forth in Counts I-VI of the Plaintiff's Complaint, and that the Hospital's motion should be denied with respect to Grochowski's FMLA retaliation and pregnancy discrimination claims under federal and state law, as set forth in Counts VIII through X. (*See id.* at 32).

On September 14, 2018, Defendant filed objections to the R&R and a brief in support of those objections (Docs. 48, 49), to which Plaintiff filed a response (Doc. 50). No objections were filed by the Plaintiff.

2

For the reasons explained herein, the Court will overrule Defendant's objections and adopt the pending R&R.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Here, the Hospital timely filed an Objection to the R&R (Doc. 48) and the parties have fully briefed their respective positions (*see* Docs. 49-51). Specifically, Defendant objects to the recommendation of the Magistrate Judge that summary judgment be denied to Defendant with respect to Counts VIII, IX and X, of Plaintiff's Complaint which allege unlawful retaliation under the FMLA and pregnancy discrimination claims under Title VII and the PHRA.

The Hospital "objects to the Report's finding of a genuine issue of material fact that 'but for' Plaintiff's pregnancy and her impending FMLA leave, the sole and undisputed decision-maker, Lisa Goble (former Human Resource Director), would have come to any

3

other decision than to terminate Plaintiff for her violation of the Hospital's policy against falsifying records." (Doc. 48, at 1-2). The Hospital further asserts that "[t]he undisputed evidence is that Ms. Goble believed that, following a complaint of absence/dereliction of duty by Plaintiff's co-worker, and subsequent investigation, Plaintiff's actions in leaving the Hospital on June 18, 2016 for 36 minutes, without clocking out, violated the Hospital's Compensation Policy and constituted a falsification of time records, a Group IV violation resulting in termination." (*Id.* at 2).

The Hospital, in its memorandum of law in support of its objections (Doc. 49), expands upon this objection to the R&R. First, the Hospital states that "'[t]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers.' *Boyle v. Penn Dental Med.*, 689 F.App'x 140, 144 (3d Cir. 2017), citing *McCoy* [*v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)]." (Doc. 49, at 1). The Hospital argues that the R&R "finds there to be genuine issues of fact regarding pretext, based, not on whether the Hospital, in the person of Lisa Goble, former Human Resources Director of Wilkes-Barre Behavioral Health Company . . ., 'honestly believed' Plaintiff to have committed a Group IV violation of policy – resulting in termination, but on whether Plaintiff or her manager believed her actions to have complied with the policies in question." (*Id.*).

The Hospital further assigns error in the R&R with respect to its determination that a genuine dispute for trial exists on the issue of pretext on the basis that the R&R improperly questions the Hospital's "business judgment by repeatedly referring to Plaintiff's termination as 'harsh' in light of what it termed 'a relatively minor infraction.'" (*Id.*). The Hospital also repeatedly takes issue with the R&R's use of the term "harsh" to describe the penalty of termination imposed in this case for the Plaintiff having exceeding what the Hospital contends was a 30 minute authorized absence by 6 minutes. (*Id.* at 3).

The R&R on this point states:

> First, we note that the nature of this sanction – termination – seems harsh for what on its face appeared to have been a relatively minor infraction involving a work absence that exceeded the 30 minute authorized absence period by only six minutes. Further, the severity of this sanction may be unprecedented. Indeed, while H.R. Director Goble chose to characterize this infraction as falsification of records, she also appeared to acknowledge that she was unaware of any instance where such a small infraction previously received such a harsh characterization.

(Doc. 46, at 28). The R&R continues:

> This harsh characterization of Grochowski's conduct becomes further suspect when one considers the fact that there may have been a disparity between the hospital's policy, as written, and that policy, as applied. For her part, Grochowski insisted that her conduct was consistent with the policy as applied. This apparent confusion and uncertainty between the written policy, and practice in the field, further undermines the degree of reliance that could reasonably be placed on this proffered justification for terminating Grochowski.

(*Id.*).

5

The Hospital disputes the R&R's "as written/as applied" analysis of the evidence regarding the Hospital's policy. However, in so doing, the Hospital may be said to have inadvertently given credence to the existence of a dispute for trial as to the policy as it was actually implemented and observed by the employees on a daily basis. The Hospital asserts in its memorandum that "The Policy has two components: employees are required to clock out and back in if you leave the premises for personal business and employees must clock out and in for meal periods of more than 30 minutes." (Doc. 49, at 4)(internal quotation marks omitted). The Hospital, after making reference to Plaintiff's co-worker, Ralph Pringle, sending an email to Plaintiff's manager, Barbara Peters, expressing "concerns" regarding Plaintiff "not assisting with work" and then walking into the workplace "with a cup of coffee," then states that Plaintiff does not dispute that the investigation into her actions "was triggered by a third-party complaint that Plaintiff was not providing the assistance required of her job and needed by her peers" (Doc. 49, at 5). The Hospital argues this shows that the R&R wrongly characterized the Hospital's investigation as one into "an incident in which it is alleged that she left the hospital without clocking out of work for a total of 36 minutes" as indicated in the R&R. (*Id.*)(quoting Doc. 46, at 27). The Defendant's argument continues, "[t]hat is, while the Report seems to trivialize the investigation as one about a simple 6-minute absence from the workplace, it began, instead, as a complaint about Plaintiff's apparent dereliction of duty which 'was not the first time this has happened.'" (*Id.*).

Defendant's attempt to find error in the R&R by comparing and contrasting evidence of record does not present a basis for this Court to sustain its objection. At trial, the Court fully expects that the Hospital will present evidence to show why it determined that Grochowski should be terminated and what conduct she engaged in which supports the termination.

The Hospital also argues that "the Court's inquiry regarding pretext must focus exclusively on Ms. Goble's understanding of the policy in question and whether she 'honestly believed' Plaintiff's actions were a violation thereof." (Doc. 49, at 5). It further argues that "[t]here is nothing in either the Report or Plaintiff's Counter-Statement of Facts to undermine Ms. Goble's belief that Plaintiff's 36-minute absence from the workplace (contemporaneously confirmed by both video and door swipe evidence) violated the Policy . . . in two ways." (*Id.* at 6).

The Hospital emphasizes the paramount significance of Goble's understanding of the policy:

> All that matters is Mrs. Goble's understanding of the Policy. The only path to defeating summary judgment along these lines would be to present evidence that (a) Ms. Goble either believed the parking lot to be part of the "premises" referenced in the Policy (and, therefore, did not genuinely believe Plaintiff violated the Policy by failing to clock out) or (b) Ms. Goble had permitted other employees to leave the Hospital building while remaining in the parking lot (other than from smoking breaks) without, as the Policy requires, "clocking out."

(*Id.* at 7).

In support of its argument, the Hospital cites to *Willis v. UPMC Children's Hospital*, 808 F.3d 638 (3d Cir. 2015). The Hospital argues that "[i]n *Willis*, the Third Circuit affirmed summary judgment to UPMC, finding that 'at the pretext stage it is not a court's role to rule on the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination.'" (*Id.* at 8). Although the principle of law quoted by the Hospital from *Willis* is correct, it is unavailing here. This is so because Lisa Goble's testimony places her credibility at issue and it is axiomatic that a Court may not assess credibility in determining whether to grant or deny summary judgment. *See, e.g., Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013).[2]

The Hospital, in effect, asks this Court to weigh the evidence and determine that Goble "honestly believed" that Plaintiff's actions were in violation of Hospital Policy and

---

[2] *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013):

> Under Rule 56, . . . a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of ... the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

716 F.3d at 772. *See also, Doebblers' Penn. Hybrids, Inc. v. Doebbler*, 442 F.3d 812, 820 (3d Cir. 2006)(stating that credibility determinations "are inappropriate to the legal conclusions necessary to a ruling on summary judgment. . . .A District Court should not weigh the evidence and determine the truth itself, but should instead determine whether there is a genuine issue for trial."); *J. F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d. 1254, 1531 (3d Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the Judge; instead the non-movant's evidence must be credited at this stage.").

warranted discharge. On the state of the record evidence, that determination of Goble's "honest belief" is for the jury. To suggest, as the Hospital does in its memorandum of law, that "there is no dispute as to her [Goble's] honest belief that Plaintiff had violated the Policy in both respects" (Doc. 49, at 12), requires an assessment of credibility that is not for this Court to make at the summary judgment stage.

Further, the Court rejects the Hospital's contention that Grochowski has not come forward with facts showing genuine disputes for trial with respect to her claims of FMLA retaliation and pregnancy discrimination. The analysis in the R&R detailing the disputes of fact is well-supported by the record:

> At the outset, the facts reveal a temporal proximity which can be seen as unusually suggestive. Thus, on May 3, 2014, Grochowski complained to her supervisors, Klem and Peters, about what she perceived to be pregnancy-based discrimination. Peters and Klem never investigated these claims or reported them to Human Resources. Instead, when Grochowski contemporaneously made what she regarded as a pregnancy-related request for an opportunity to work within an air-conditioned office in May 2014, that request was categorically denied by Klem and Peters, who reportedly told Grochowski "absolutely not." One month later, in mid-June 2014, these supervisors and H.R. Director Goble undertook an investigation into an alleged workplace infraction by Grochowski involving a 36-minute absence from her workplace. That investigation began mere days before she exercised her pregnancy-related FMLA leave and concluded days after she used this leave with her termination from work. The close timing of all of these events to Grochowski's exercise of her legal rights discloses the type of temporal proximity which may support a discrimination or retaliation claim.
>
> Moreover, the record reveals other evidence which may also permit an inference of intervening antagonism between Grochowski and her superiors. For example, the adverse actions cited by Grochowski all follow closely on the heels of her May 3, 2014 pregnancy discrimination complaint against her supervisors. As a matter of fact, and commonsense, that complaint could be

9

> viewed as an event which would give rise to an intervening antagonism against Grochowski. Furthermore, the evidence shows that, while the hospital's Human Relations decision-maker Lisa Goble insisted that discriminatory animus played no role in this decision to fire Grochowski, she was fully aware of Grochowski's pregnancy and FMLA leave status at the time she decided to impose the most severe sanction, and fire this long-time hospital employee for a contested and relatively minor rules infraction. Moreover, at least some evidence suggests that Goble herself recognized that this action could be perceived as discriminatory, since she instructed staff to prepare documentation to defend her conduct in court. This course of conduct may be subject to competing interpretations, but at least one interpretation would support an inference of discriminatory animus.

(Doc. 46, at 29-31).

This Court finds no error in the conclusion of the R&R in its assessment of whether genuine disputes of fact exist for trial:

> Taken together, we believe that this evidence of temporal proximity, antagonism and inconsistent justification for the harshest of employment actions, the termination of a longtime employee, is sufficient to create disputed issues of fact for trial on these PDA and FMLA retaliation claims.

(*Id.* at 31-32).

The analytical standard for determining whether, in a discrimination action, a genuine dispute for trial exists where the plaintiff-employee asserts that the "legitimate non-discriminatory reason" given by the employer for its disciplinary or discharge action is pretextual, has long been established in this Circuit as enunciated in *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994). There, our Circuit stated that a plaintiff may survive summary judgment by submitting evidence:

> [f]rom which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory

10

reason was more likely than not a motivating or determinative cause of the employer's action.

Id. at 764.

In *Keller v. Orix Credit Alliance, Inc.*, the Circuit reiterated the instruction given in *Fuentes*:

> To discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.

130 F.3d 1101, 1108-1109 (3d Cir. 1997) (quoting *Fuentes*, 32 F.3d at 765). Further, the *en banc* court in *Keller*, again discussing *Fuentes*, explained that "[i]n simpler terms, [the employee] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Id. at 1109.

Here, the record evidence presents both undisputed and disputed assertions of fact which present a jury question as to whether the proffered reason for Grochowski's discharge was "so plainly wrong that it cannot have been the employer's real reason." *Keller, supra*, at 1109.

Plaintiff filed a counterstatement of facts (Doc. 25) wherein Plaintiff responded to the 94 statements offered by Defendant in its statement of material facts as to which it contended there was no issue for trial. In addition, however, the Plaintiff added paragraphs

11

95 through 128 as a counterstatement of material facts to which the Defendant then responded (Doc. 44). A review of these additional assertions of fact by Plaintiff and responses by Defendant present admissions by the Defendant as well as disputed material issues which separately present issues for trial as to whether the Hospital's proffered reason was "so plainly wrong that it cannot have been the employer's real reason." First, in response to Plaintiff's statement of fact stating "Plaintiff's supervisor, Barbara Peters allowed her employees to add both 15 minute breaks with their 30 minute lunch break to make a complete hour" (Doc. 25, at ¶ 99), Defendant states: "it is admitted only that Ms. Peters stated during a meeting with Plaintiff and Ms. Chandler on September 11, 2014 that 'employees are allowed to combine breaks and lunch to make an hour'" (Doc. 44, at ¶ 99). Further, in that same response, Defendant asserts that "it is undisputed that Plaintiff's employment was terminated for abuse of paid time by failing to clock out, not for excessive breaks or lunch periods . . ." (*Id.*). However, in response to Plaintiff's paragraph 108, Defendant admits that Human Resources Manager Goble testified on behalf of the Hospital "If you leave the building and you stand on the sidewalk and smoke, it's not more than 30 minutes, you're not required to punch in or out." (Doc. 44, at ¶ 108). In response to paragraph 109, the Defendant states: "it is admitted that WBBHC's investigation of Plaintiff's suspected abuse of paid time revealed that she had left the building for approximately 35 minutes during this shift without clocking out, which was determined to be a violation of Hospital policy." (*Id.* at ¶ 109).

These statements strongly suggest that contrary to much of Defendant's argument, the violation of Hospital policy that Defendant asserts occurred was Plaintiff having left the building for 5 minutes more than Ms. Goble testified was allowed without the employee being required to punch in or out.

In response to Plaintiff's statement of fact that "WBBHC cannot cite any other employees having been terminated to returning 6 minutes later from lunch" (Doc. 25, at ¶ 114), Defendant quotes the testimony of Lisa Goble who testified that "there are individuals that are terminated for abusing paid time, violating clocking in and clocking out." However, she added "Do I know specifically, their minutes? No, I do not." (Doc. 44, at ¶ 114). Likewise, with respect to Plaintiff's statement of fact asserting that "WBBHC cannot cite any other employees having been terminated for failing to clock out when leaving the building for more than 30 minutes" (Doc. 25, at ¶ 115), Defendant responded with the testimony of Lisa Goble as follows:

> Q: Did she also take – did she also take another 30-minute break that day? Did she – you said that employees were allowed a 30-minute lunch, you know, without punching out. Did she take another 30-minute lunch during that shift?
>
> A: I do not know.
>
> Q: So, again, I'll ask you if you know situations where someone has clocked out and – or left the building for more than 30 minutes and not clocked out and been terminated for that specific offense.
>
> A: I do not know specifically.
>
> Q: Okay. You don't recall any?

13

> A: Again, I recall other abuse of paid time situations but not that particular one.

(Doc. 44, at ¶ 115) (quoting Goble Dep. at 44:19-45:7).

Thus, a genuine dispute of fact arises as to whether the Plaintiff was singled out for discharge theretofore never imposed on any other employee.

The Hospital also responds to Plaintiff's paragraph 124 by stating that "It is admitted only that during the September 11, 2014 meeting with Plaintiff and Ms. Chandler, Ms. Peters stated that her employees were 'allowed to combine breaks and lunch to make an hour.'" (Doc. 44, at ¶ 124). This is in accord with the email from Susan N. Chandler to Lisa M. Goble dated September 11, 2014 (Doc. 28) ("At this point Barb said that her employees are allowed to combine breaks and lunch to make an hour if sometimes they don't get to lunch."). Defendant further admits that Grochowski testified that she did not leave the Hospital parking lot on June 17-18, 2014. (Doc. 44, at ¶ 126). To these admissions, the Court notes the testimony of Grochowski that she was never disciplined for taking excessive breaks at work (Doc. 26, at 140:16-18). Further Plaintiff testified:

> Q: Okay. You had 60 minutes during the eight-and-a-half-hour shift to not be performing duties, correct, and you could use that any way you wanted?
>
> A: Okay.
>
> Q: Is that accurate?
>
> A: Yes.

14

> Q: Okay. And that could be a 30-minute lunch with two 15-minute breaks or that could be a consecutive one hour lunch?
>
> A: Uh-huh.
>
> Q: Correct?
>
> A: Correct.

(*Id.* at 155:11-23). Further, Grochowski testified that "Barb Peters let us clock – Barb Peters let us take an hour lunch without clocking in and out." (*Id.* at 159:21-22).

Plaintiff testified that she would leave the building without clocking out "to go sit in my car" and that she never left the Hospital premises without clocking out. (*Id.* at 185:16-22). She further testified that Ms. Peters told her "at some point between March of 2004 and September of 2014 that the parking lot was part of the Hospital's premises." (*Id.* at 196:6-9). Additionally, Grochowski testified:

> Q: Okay. And the fact that an employee can take a meal period or can combine two breaks and lunch into an hour doesn't mean that the employee doesn't have to clock out during that period, does it?
>
> A: You don't have to clock out. We never had to clock out. I worked there for ten years. I never had to clock out. Nothing was ever said to me. Nobody else ever had to clock out either unless you left the premise.

(*Id.* at 197:23-198:7).

The admissions of the Hospital as identified herein together with the testimony of Plaintiff create genuine disputes for trial and, more specifically, present a dispute for trial as

15

to whether the reason proffered by the Hospital for the discharge of Grochowski was "so plainly wrong that it could not have been the employer's real reason", Keller, supra, at 1109.[3]

To this recitation of disputed material facts, the Court adds the conflicting reasons offered by the Hospital where the reason given for Grochowski's termination before the Pennsylvania Unemployment Compensation Board was that she was discharged for working in an unauthorized office. Finally, the Court is not inclined to accept the employer's assertion that Plaintiff's testimony as to what she was told by Barbara Peters is hearsay. Although not necessary for this Court's determination that the Hospital's objections should be overruled, it is nonetheless an assertion by the Hospital which this Court does not accept at this juncture, given Peters' supervisory position with the Hospital.

### III. CONCLUSION

For all of the foregoing reasons, upon *de novo* review of Judge Carlson's R&R (Doc. 46), the Court will overrule Defendant's objections to the R&R and adopt the R&R in its entirety. A separate Order follows.

Robert D. Mariani
United States District Judge

---

[3] It bears noting that the decision cited by Defendant in support of its position, *Willis v. UPMC Children's Hospital of Pittsburgh*, expressly utilizes the requirement quoted herein from *Keller*, that a plaintiff in establishing pretext must show that the termination or discipline was "so plainly wrong that it could not have been the employer's real reason." *Willis*, 808 F.3d at 648.